Welcome to this special, you know, sitting, this case number 2422-10791 started off, you know, as a non-orally argued case and has been through a couple of wrinkles, but nonetheless we appointed counsel and we've had the briefing and so we determined at this stage having oral argument in the case would be beneficial to all, so we appreciate your gearing your schedules up for that. So with that, I will call Dillard v. Davis, Mr. Lindsey. Thank you, your honor. May it please the court, counsel. My name is Christopher Lindsey. I represent the appellants in this case. Do I have to speak up, either that or we're going to need a . . . I deeply apologize, Judge King. The issue before the court today is whether a 1983 due process claim arising from a prison disciplinary which resulted in a loss of good time, excuse me, is barred by heck even though the plaintiff is serving a life sentence. And I should say this, as Judge Stewart was mentioning, this issue arises from a much bigger case, but this appears to be the issue before the court and the one that briefing was requested. Just as a preliminary matter, do we have any jurisdictional issue in terms of the timeliness of the notice of appeal, et cetera, is that in the case, still in the case, a minor issue or is it the heads up? I know the heck issue is there, but since we've got you here, I'd ask. I don't believe so, your honor. I believe all of those issues have been resolved for quite some time now. There are three reasons why this court should find that the due process claim is barred by heck. The first is Wilson v. Midland County, the en banc opinion from about a year ago coming out of this court. The rule of orderliness, I would argue, demands that heck bars this due process claim. The second reason is that the conclusion of the district court is a pure innovation of the district court that is not supported by this court's precedent or the Supreme Court's precedent and it perversely rewards those prisoners who have committed the worst crimes and have the lengthiest sentences. Third, the conclusion of the district court is self-defeating. If it is true that heck does not apply because Dillard does not invoke a liberty interest, then the same rationale applies to the due process clause. He does not have a due process claim at all. First to Wilson, and I must point out initially that Wilson is before the Supreme Court on a petition for cert that has not been disposed of, it's been relisted, and it's probably unwise for this court to rule before that has been taken care of. Are you contending Wilson changed cases like Santos and Gray? I'm not contending they changed those cases. Those are still binding on us. They are, but those cases involved prisoners who did not suffer a loss of good time. Well, I think in Santos it is a good time. The court said no summary judgment, we're going to parse through, and ones that don't necessarily negate the duration of the original sentence aren't barred. Correct, Your Honor. Are you saying Wilson has changed that or are you saying you still prevail under Santos? I'm saying to the extent that there was any ambiguity about whether a loss of good time would bar the claim under Heck, Wilson cleared that up. Wilson isn't a good time case. We want to look at the fortuity of being in or out. Do you agree with me? Wilson, she was attacking her conviction front and center. She was saying the prosecutor was the law clerk. I agree with that. Every single opinion, the majority, the separate, the dissent, all of them said she still has habeas for that. Correct, Your Honor. Okay, so are you saying that Mr. Dillard still has Texas state habeas relief, even as to disciplinary infractions that led to just conditions of confinement changes? Yes, Your Honor, and I cite cases from this court. What's the best one? Because I need to go back and look at that. What's the best Texas case that says someone in jail for life, so not attacking their sentence, but doesn't want, wants recreational privileges, want commissary privileges, doesn't want a history keeping him in seg, he can challenge that disciplinary conviction through habeas. What's the best case? I do not have a Texas case. That is your Texas, representing Texas, you're telling me that as for prisoners in Texas, they have habeas relief from disciplinary convictions, even though they're in for life, as to things like recreation commissary. Habeas is available. What I'm saying is that does not appear to have been tested in Texas. This court has assumed that that right exists in Texas. Okay, but you're representing Texas. Would you oppose it? In other words, no one wants a null set where, say, let's believe Dillard, for example, for a minute, that he was maliciously framed. He was in his cell. He couldn't have assaulted the officer. But then he ends up in segregation, no privileges. I think you'd agree. Every opinion in Wilson says it's critical if we're going to say there's a challenge between the tort and the criminal, that he have an outlet to challenge it. So I think it's really critical to know what Texas is saying. Can he challenge his privilege losses through habeas? It depends on the losses we're talking about, Your Honor. If we're talking about privilege losses, if we're talking about solitary confinement, then he has an outlet to challenge those via the grievance system. Now, I'm asking about habeas. Can he file a Texas habeas? He can file a Texas habeas with relation to the loss of good time. And this goes back to Sandin v. Conner. Sandin v. Conner delineates what is a liberty interest and what is not, and it specifically says that things like solitary confinement and loss of commissary privileges, things like that, do not fall under the Duke Process Clause. Those are expected parts of prison life, and they are not actionable under Duke. So we should do what Judge Smith said in Santos and then in Gray. We should parse, and to the extent, we look at what the Supreme Court said is the ask. If there are asks through tort that relate to privileges, conditions of confinement, there's no heck bar. But we separate out the claims that necessarily are saying, I get to have less time. Are you accepting that division? I accept that in principle, Your Honor. The problem with the cases that we're talking about is those cases talk about a claim that does not attack the disciplinary directly. This claim in this case attacks the due process of the disciplinary itself, and that's where it lines up with Wilson. The Wilson case attacked her conviction itself. This case also attacks the disciplinary conviction. Okay, stop right there, because Wilson attacked the original conviction. Yes, Your Honor. And Prysor and Edwards that extend heck bar to disciplinary, I'll call them adjudications unless there's Texas law that says they're criminal convictions. We do heck bar challenges to disciplinary conviction only because they sometimes result in less sentence of the original conviction. You follow that? Do you agree with that? Loss of good time. Yes, Your Honor. Yeah. And here, I agree. Hard question for them. He did lose good time. But it won't make a difference for a sentence, correct? Practically speaking. Yes. And that's where Wilson comes in, because Wilson said the practical aspect of it, the fact that Irma Wilson serves no more time in prison doesn't matter. It's the favorable termination. Right, but- She was attacking her conviction. Exactly. She was attacking, if this was as simple about Wilson as you say, you wouldn't be standing here. We would have decided this case a long time ago. I mean, I get it. That's your position, but we wouldn't have said this. We decided this two years ago. If Wilson was that self-answering, well, we're 9-8 in Wilson and all that, and you said SCOTUS. But I get it, but I'm hard-pressed, because you seem not to want to embrace that here, Dillard is not directly attacking his conviction. He's got a life sentence, and the district court's determination wasn't wrapped around that. I get it. I get that you disagree with it, but it wasn't wrapped around that. So, not giving up your argument, but assuming for the moment the panel, at least some of us, is not totally convinced that Wilson is the answer, King's X, where are we then? I don't know that that fairly characterizes my position. Okay. And I don't mean to do that. I'm just saying you started your argument saying Wilson is the answer. It's before SCOTUS. I don't recommend the panel do anything before they do it. I mean, that was your lead argument, and you're still in Wilson, Judge Higginson. The fool's about to live, and you want to say it's identical and so on, but all these cases have a wrinkle, as you well know. But in Wilson, she was clearly attacking her underlying conviction, and part of it was she said, look, she needs to go back to Texas. So, nobody disputed that she had a remedy in Texas, and so are you saying in answer to Judge Higginson here, he has a Texas state remedy, or are you saying there's no Texas case that says that, or it's theoretical that he does? He has a remedy, and I bring up the Supreme Court only to be fair that if Wilson is overruled, then what we're doing here, what we're arguing is on a completely different ground. But assuming it is not overruled, my position is . . . Remind me. What's the cert question in Wilson? Remind me. I honestly don't know, Your Honor. I think it's whether in or out, being in or out allows you to go after your actual underlying conviction, or do you need to favorably terminate it? But here, isn't the question here totally antecedent to that? We're not asking whether anything needs to be favorably terminated. We're asking whether the disciplinary sanctions that he wants removed relate to the sentence at all. No, that is not what we're asking, Your Honor. In fact, that is a key point. He is not attacking the sanctions. He's not trying to get the sanctions reversed. He is attacking the procedural due process. Well, that is one of his claims, but Santos and Gray says we parse them out. We look at the ones that ask. That's exactly what our court has said, unless you're saying somehow Wilson sub silentio abrogated that. My difficulty with your position, which is, well, theoretically, we do know that good time was lost, so it doesn't really matter that he's in jail for life without parole. But then why would our court repeatedly be saying we have to fact-intensively look and parse out the different tort asks? When this court says that, Your Honor, it is in relation to a claim that does not attack the disciplinary itself. It is in relation to an excessive force claim where a disciplinary results from it or something like that, where the parsing comes with, does the disciplinary directly relate to the underlying facts that gave rise to the claim? No, but that's exactly what we said we don't. It doesn't matter if they're intertwined, right? Quoting Muhammad, Supreme Court case, so Wilson couldn't do anything about a Muhammad. In Santos, we said, Hecht is not implicated, direct quote from Muhammad, when a challenge does not threaten a consequence for the duration of the sentence. A consequence. But he isn't challenging anything that threatens. He knows he's in for life. Muhammad did not involve a loss of good time, and that was specifically pointed out. But Santos did. Santos applies Muhammad to a good time case. The problem is this is a direct attack on the conviction, the procedural due process that Mr. Dillard received in a conviction where he received a loss of good time. And so it's not about the practical aspect of whether or not he actually experiences that loss of good time. It's the favorable timing. For us to follow your reasoning, I'm asking you this because of the supplemental briefings. You probably remember their cases. They cite the Ninth Circuit case Wilkinson. You don't address it in your reply, but you probably read it. The Ninth Circuit said, Factually, if someone's got indefinite life, Heck isn't applicable. I agree. And so therefore, we would have to split with the Ninth Circuit to give you the relief you asked for. Yes or no? I believe that, yes. I believe this Court has already split with the Fifth Circuit. And that's in Wilson? Yes. Okay. Quote me the portion of Wilson, the exact proposition that you think has anything to do with somebody who is still in custody and we're not debating whether there's a favorable termination. What's the dicta in Wilson that you think means we've already split with the Ninth Circuit? The fact that Wilson says the only thing that matters is whether there's a favorable termination. It is a required element of a due process claim. Page 397.  Criminal judgments require criminal remedies. Page 405. That is what I am asserting here. The practical aspect of it. But she's not attacking her criminal judgment. And you, I think, have been a bit evasive as to whether or not she is guaranteed a habeas relief in Texas law to attack all aspects of her disciplinary adjudication. You can't cite a single Texas case where habeas relief was granted as to those sanctions. I cannot. I can also not cite, there is no habeas case where a Texas court has found this is unavailable. This is a loss of a liberty interest. And that, this gets to the last point I would like to make. Yeah. If it's not a liberty interest, and therefore does not implicate heck, that simply means that there's no due process claim at all. That means it's not actionable under 1983. This is a circular firing squad. If there's no heck, there's also no due process claim. I see my time is expiring. If there's no other questions. Well, you've reserved your rebuttal time. Thank you, Your Honor. Thank you, sir. All right. Counsel. Mr. Gant. Good morning, Your Honors. May it please the Court. Carter Gant for Daniel Dillard. The state stood up here and said that they believe that in some circumstances, and potentially Mr. Dillard, that there is a available habeas claim. However, Mr. Dillard brought both a habeas claim and then a 1983 claim in front of the district court. The state there argued that habeas was not available. The report and recommendation issued by the magistrate judge, which was then subsequently adopted by Judge Lynn, agreed, but in fact noted that Mr. Dillard was also bringing a 1983 claim. So, Mr. Dillard, in fact, tried to bring a habeas claim, and it was found to be unavailable to him. If the state has it both ways, Mr. Dillard has no judicial remedy to vindicate his rights. This cannot be the case. Should this panel so decide, then Mr. Dillard would be stranded in a legal no-man's land without any means to vindicate his rights. And the state argues that this case's 1983 claim is barred by Huckabee Humphrey. But Huckabee Humphrey was clear that the 1983 suit only needs to reach the point of a favorable termination if the suit is challenging the underlying fact of confinement or the duration of confinement. Mr. Dillard is currently incarcerated for life in prison without the possibility of  parole. No decision made by the district court, or indeed this court, could undermine that fact. The line between Hecht and 1983 is very difficult. Supreme Court's revisited this multiple times, and he is right, opposing counsel's right to focus on Wilson as our recent en banc. So, I guess I'll start out with two questions. One is, your client did lose good time. So, is your rule one where he can just plead around it? Or in his tort claim, he says, I don't want my good time back. Therefore, he can eviscerate Hecht? Is it just a pleading nicety? Your Honor, there were certain cases where plaintiffs tried to do that. However, I would argue that Mr. Dillard is uniquely situated in that the good time credits have no implication for the fact or duration of his confinement. And as noted in the district court, that's actually a red herring for the purposes of this case. It does not matter. It really, the 1983 claim and a decision on the 1983 claim would only go to the conditions of confinement, which the Supreme Court has held would not implicate the heck bar. But you agree, his case isn't about medical conditions and other that. It's frontally, I couldn't have done the assault. I didn't. I'm blameless. I'm innocent. So, it is a direct attack on the disciplinary adjudication, which did lead to lots of good time lost. Those are all true facts, right? His attack is, I'm innocent of what got me lost lots of good time. So, that's why I think Texas is saying, are you asking for a rule where the worst of the worst get the most? In other words, just as your position depends entirely on him having life in prison without parole. Just that fact alone trumps. Your Honor, we're not asking for a categorical rule. We're asking for a case-by-case and fact-specific determination, where particularly Mr. Dillard still has an avenue to vindicate his rights. It cannot be the case. Okay, just to press you, and I certainly appreciate you accepted the appointment, but I do think the Wilson majority said, it isn't necessary, heck, does not contemplate there always has to be a remedy for every wrong. Do you agree with that? I mean, laid in the opinion, under the five responses to his, or they say one, it could just be you're out of luck. So, you don't always get a tort option because you didn't have a habeas option. Or do you think there always has to be a, the 1983 plaintiff has to exist? That would be in friction with Wilson, I think. I would argue that Wilson is not directly attacking the availability for each and every plaintiff, but in this case, we would argue that there is plainly an available remedy under 1983 for Mr. Dillard. And that's not just because he has no habeas relief, but it's also because under Muhammad in cases like that, he isn't attacking the duration of his sentence, and he couldn't? Is that? Under, as you mentioned, Muhammad v. Close, the underlying sentence that matters is the sentence that's resulted in the confinement or sentencing. So, that would be Mr. Dillard's confinement for life without the possibility of parole. It's more the state's position that the confinement that matters is his confinement in administrative segregation, or ADSEG, which is currently known as restrictive housing in Texas. And so, the point is, as you cited from Muhammad v. Close, and which is also cited in Born v. Gunnels, that the conviction that matters is the underlying one, that's the one that goes to the conditions of confinement, and the disciplinary hearing did not go, a decision on the disciplinary hearing would not necessarily undermine the fact or duration of confinement, and therefore, wouldn't fall within the bounds of a HECBAR. In light of Wilson, articulate for me precisely what the holding you would ask this panel to hold in this case, or in the wake of Wilson, et cetera. Just straight on, articulate for me what the holding from this panel would be here. So, in Wilson, the on-bank decision is consistent with prior Supreme Court precedent, which then determined that the HECBAR applies equally to non-custodial and custodial plaintiffs, and the favorable termination where the success on the suit would necessarily imply the invalidity of the underlying sentence, and that's consistent with Supreme Court precedent. But I'm not asking you for the argument. I'm asking you, you get a one shot right here. You've argued it. We read it in the briefs. You heard what counsel, I'm saying, you tell me if I were to let you write it. You articulate for me, in light of the uniqueness of his situation and facts, articulate for me what the holding of this case should be from this panel that would provide relief to your client. Ah. Apologies, Your Honor. I misunderstood the initial question. No worries. The holding for this case would be that Mr. Dillard is still able to vindicate his 1983 rights because any decision made would not necessarily undermine the invalidity of his So you're articulating it with respect to the conviction which gave rise to his life sentence? Yes, Your Honor. So where are you with respect to the disciplinary aspect? Counsel is otherwise arguing, no, there's no doubt he's not urging against the life sentence he got, but I didn't hear you embrace the particular circumstance here where it's the disciplinary opinion. That's why I asked you to articulate. It's easy to argue that, but when you've got to articulate what it is in light of the law, that's a different exercise. You follow what I'm saying? Yes. So with respect to the disciplinary hearing, the Supreme Court has said that a disciplinary hearing, while it may give rise to a heck bar, not necessarily, and only for claims that undermine the validity or the duration of a sentence. And so here the disciplinary conviction or the results of the disciplinary hearing would not matter for the purposes of the heck bar. Well, part of the district court's ruling was that there were disputed facts, et cetera, et cetera. The state's position is there are no facts at issue here. It's a purely legal call, if I understand your argument. It's just a pure legal call that there are no facts that are in dispute at all. It's just a thumbs up or down as to what the law is. In this context where we're talking about disciplinary, you agree that there aren't any disputed facts that are issued, that this is wholly a legal call and we just have to make it? I would agree with respect to whether or not heck applies. That is a purely legal call. Okay. Under Texas law, is a disciplinary adjudication a criminal conviction, or is that a hard question? I believe it's a civil conviction, Your Honor, but I'm not quite sure. Does that matter? Because the Supreme Court has extended heck bar to disciplinary whatever they are, as long as they affect the sentence, the original underlying sentence. Is that basically right? And your position is it couldn't hear. I think Texas's position is, well, it did. So either way, we're trying to look at realities. He got a good time dimunition, but it's not going to matter. Is that the world we're in? Your Honor, I would argue that the distinction between civil versus criminal isn't relevant for these purposes. So then we are looking at the Supreme Court cases early on, one before heck, one after, Pizer, Edwards, that did extend it to disciplinary convictions. My rough read, as I said to opposing counsel, is only when the conviction, those affect the sentence given. I think you accept that. And then your answer is, but it couldn't hear, and that's what the Ninth Circuit ruled. He was very candid. We'd have to split with the Ninth. But his position is, but look at the record. He lost good time. He did lose it. So he's attacking, and it is a due process attack on the whole shebang, so it isn't easy to parse claims. He's attacking any consequences of his disciplinary conviction, saying he wasn't there. If he were to win, then good time couldn't be removed. Your Honor, the good time credits were, in fact, restored to him, and I believe we mentioned that in our brief. Yeah, you did. So it doesn't matter whether or not the good time credits— Were they restored before or after he brought the 1983?  After. Yes. So he's been restored those credits, and again, as I mentioned, those are red herring. They don't matter. It's a very technical argument to matter that only because the fact that good time credits were removed, regardless of the implication that they have as a clever way to sidestep some Supreme Court precedent by that pure application alone. Your argument today, it's distilled down to we're controlled by Wilson. So in one sentence or two, you would say Wilson isn't applicable because—how do you finish the sentence? Parts of Wilson are applicable. We would argue that it's not directly on point. Wilson primarily deals with whether or not a HEC bar applies to a custodial or noncustodial plaintiff, but it does apply with regards to where favorable termination is required and that it's only required where success on the suit would necessarily imply the invalidity of the underlying sentence. Okay, that's distinguishing Wilson. Do you just—to help me simplify, what's your strongest case that HEC bar doesn't apply to a disciplinary conviction that did result in good time loss because the defendant isn't going to get any loss of a sentence no matter what? Well, Your Honor, coming out of the Ninth Circuit— Yeah, I know the Ninth. You're right. That's the closest. Yeah. But in terms of our precedent, is it Santos and Gray that we have to fact-intensively look at what the plaintiff is asking for and what the consequences on the sentence would be? I think Borden v. Gunnels is also a strong analogy. Borden—spell that again. B-O-R-E-N-E, and I believe opposing counsel mentioned that and dealt with that in their brief as well. But there, the circuit applied the holding from Muhammad that we've been discussing and also found that HEC did not bar the claim and that was another excessive force claim but would have no bearing on the underlying sentence. And so, in addition to, of course, the Wilkerson case, which is very directly on point with respect to someone serving a life without the possibility of parole, out of this circuit, Borden v. Gunnels would be the next closest, we would argue. Actually, I'm curious, just from the briefs, is the officer who claims that he was assaulted by Dillard, did he resign? Yes. I don't recall his name exactly. He's no longer employed at the time. And was there or wasn't there a video of the alleged assault? Does the record reflect that? And if it does, that there was a record, or at least that the state says there was, of a video, is the record clear that it was never given to Dillard? Am I hovering around any facts established in the record? Your Honor, I believe that there was, in fact, a video, but we would stand on briefing from the lower court, from our client on that. We were not engaged to represent him with respect to the factual underpinnings in his district court argument. Okay. Well, it was part of why I asked you about the facts, because part of the district court's denial of summary judgment to the state was your client's claim that there was a video of what transpired. He wasn't given it, blah, blah, blah, blah, blah. And that was part of the denial of summary judgment to the other side. And that's why I asked him, I asked you, okay, we're here. Now, are there disputed facts that are at issue? Because at this stage of the case, I was understanding it to be King's X. It's just heck or not. I'm not asking you to retreat on a position, but that was why I asked whether that . . . because that was similar to Judge Lynn's denial of summary judgment to the state, was about the fact issue. Now, that gets separate and apart from the heck matter, but I get it. That's not a part that you're urging. It's the heck issue, right? That's correct. Okay. It does not have any bearing on whether or not heck applies. In addition to Bourne v. Gunnels and Wilson, we would argue that this case would be consistent with Supreme Court holding to find that Mr. Dillard is able to vindicate his rights under 1983. Although this is, at times, a messy issue, all this case requires is a straightforward application of existing case law. This doesn't require any inventive arguing from the district court, and we would ask that this court, indeed, allow Mr. Dillard to vindicate his 1983 rights and pursue his claim. Your Honor, I will see the rest of my time. All right. Thank you. The court, supremely, for want of a better word, does appreciate your taking on this case. As I said, it began as a non-Oily Orgy case, and it has morphed, and so we appreciate you and all of the counsel who are willing to be on our role, and particularly to take a case that's thorny, to put it mildly. So we appreciate the briefing and your appearance here in representing Mr. Dillard in an absolutely excellent way. Thank you. Thank you, Your Honor. All right. Counsel? Thank you again. I just want to take the closing few minutes to point out a few things. First, Born v. Gunnels, I know I addressed this in my reply brief. I don't believe this case is on point at all. This was an excessive force claim that the defendants attempted to invoke a heck bar, and the court simply found that the relevant disciplinary was not related to the excessive force claim, and so it did not affect his underlying disciplinary. The court specifically said it did not affect his underlying disciplinary conviction, criminal conviction, or the length of his sentence. It's simply not on point here. Just to reassure me on first principles. Yes, sir. It is very important that if someone in prison is maliciously framed and denied privileges or stuck in seg, they have some way to vindicate that. You're saying hecked, they can't do it through 1983 because hecked bar exists. But I don't see, hecked is all premised around federalism and comedy, right? In other words, 1983 is available normally for conditions of confinement problems. It's only not if it's going to attack the state's interest in finality of its conviction. How is this guy's suit attacking the underlying capital murder conviction? Not. Or the fact, any aspect of the sentence? That's my question. How does him pursuing 1983 to make sure he wasn't framed in any way implicate the state's interest in the capital conviction and life sentence? I don't believe it does. It's purely about the disciplinary conviction. Okay. So that's what I thought. So your argument has to be this is no longer at all about the state's underlying conviction or sentence. It's now that heck is extended so far it's looking even just at disciplinary. So then my question is let's say someone gets disciplined for something that you agree would never be heck barred. Can the state suddenly make it heck barred by adding one day of lost good time? Only if the challenge is directly to the disciplinary itself. But every attack on the disciplinary conviction is going to be saying I didn't deserve it. Like you can say it's an excessive force, but here it is sort of an excessive force. He's saying I didn't resist. I wasn't there. That's why they did excessive force. We should recall, Your Honor, that the Eighth Amendment is very broad, and if we're talking about conditions of confinement, 1983 is perfectly available to sue for Eighth Amendment violations. And, indeed, Mr. Dillard does that prolifically. If we're talking about disciplinary convictions, again, he has options. He can file grievances, which has an entire administrative process, and while it is not clear that he can go through the habeas process on the state side, it is also not clear that he cannot, and he never tried to. He, indeed, tried to file a federal habeas, but that was denied for very good reasons. That sounds like Wilson is pretty far afield because every opinion in Wilson emphasized you should have been going through habeas. Ms. Wilson, you had many, many years to go through habeas. Here you're saying forget the underlying conviction, forget habeas, any disciplinary conviction that the prison decides to insulate with good time. I'm not saying that, Your Honor. First, I'm saying favorable termination is the first issue. I know, but you can't say it in abstract. You've just said before it's favorable termination, even independently stand alone to the disciplinary conviction. What I'm saying is— I don't see a case that says that. He never properly tried habeas. But you're saying we don't know if he could? Come on. This court has recognized the possibility of doing a state habeas, and he never even tried to do that. He just went straight to 1983. It's a try and fail, and then— Again, I can only quote Wilson. Criminal deprivations—well, now I'm paraphrasing. Criminal deprivations deserve criminal remedies, and this is not a criminal remedy. I just want to conclude with the fact-specific determinations that the other side is calling for here. This is an incredibly messy path to go down. Yes, Mr. Dillard has a life sentence, but where does it end here? A 99-year sentence, an 80-year-old with a 50-year sentence, a life sentence that has an active appeal. District courts—the fact patterns are endless here where a district court could say, well, this loss of good time is just not going to matter, so we're just going to skip heck. Thank you, Your Honor. All right, thank you to both sides. We appreciate your prior briefing in the case and coming for the argument today. The case will be submitted to the panel, and we'll get it ruled on in due course. Court stands in recess.